AO 93 Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
for the
District of Arizona

| | |
|---|---|
| In the Matter of the Search of<br>is a black Samsung Galaxy A20, in a black case,<br>IMEI No. ending in -2721. | Case No. 21-391 MB |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of Arizona:

**As further described in Attachment A.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal:

**As set forth in Attachment B.**

**YOU ARE COMMANDED** to execute this warrant on or before ___12/29/21___ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m. ☒ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to <u>any United States Magistrate Judge on criminal duty in the District of Arizona</u>.

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized ☐ for _30_ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: ___12-15-2021 @ 3:30 pm___      ___[signature]___
                                                                                            *Judge's signature*

City and state: <u>Phoenix, Arizona</u>          <u>Honorable Michelle H. Burns, U.S. Magistrate Judge</u>
                                                                        *Printed name and title*

## ATTACHMENT A

*Property to be searched*

The property to be searched is a black Samsung Galaxy A20, in a black case, IMEI No. ending in -2721 (hereinafter the "**SUBJECT CELLULAR TELEPHONE**"). The **SUBJECT CELLULAR TELEPHONE** is currently located at ATF Phoenix Field Division evidence storage vault, located at 40 N Central Ave, Suite 900, in Phoenix, Arizona.

This warrant authorizes the forensic examination of the **SUBJECT CELLULAR TELEPHONE** for the purpose of identifying the electronically stored information described in Attachment B.

 

**ATTACHMENT B**

*Property to be seized*

1.     Any records and information found within the digital contents of the **SUBJECT CELLULAR TELEPHONE** that relate to the offense of Knowingly Make a False Statement to be Kept in the Records of a Person Licensed Under Chapter 44 of Title 18, United States Code in violation of Title 18, United States Code, Section 924(a)(1)(a), including:

    a.  all information related to the sale, purchase, receipt, shipping, importation, transportation, transfer, possession, or use of firearms, firearms parts or accessories, or ammunition;

    b.  all information related to buyers or sources of firearms, firearms parts or accessories, or ammunition (including names, addresses, telephone numbers, locations, or any other identifying information);

    c.  all bank records, checks, credit card bills, account information, or other financial records;

    d.  all information regarding the receipt, transfer, possession, transportation, or use of proceeds of firearms, firearms parts or accessories, or ammunition;

    e.  any information recording schedule or travel;

    f.  records of or information about the cellular telephone's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

    g.  evidence of the attachment to the cellular telephone of another storage device or similar container for electronic evidence;

    h.  evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the cellular telephone;

    i.  evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation;

    j.  contextual information necessary to understand the evidence described in this attachment.

2.    Any records and information found within the digital contents of the **SUBJECT CELLULAR TELEPHONE** showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

AO 106 Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of Arizona

| | |
|---|---|
| In the Matter of the Search of<br>is a black Samsung Galaxy A20, in a black case,<br>IMEI No. ending in -2721 | Case No.  21-391 MB |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

### As further described in Attachment A

located in the District of Arizona, there is now concealed:

### As set forth in Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is:

☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code/Section | Offense Description |
|---|---|
| 18 U.S.C. § 924(a)(1)(A) | False Statement During Purchase of a Firearm |

The application is based on these facts:

### See attached Affidavit from Special Agent Hannah Carroll.

☒ Continued on the attached sheet.
☐ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA Coleen Schoch

*katherine rottman*
_Applicant's Signature_

Katherine Rottman, Special Agent, ATF
_Printed name and title_

Sworn to ~~before me and signed in my presence~~ telephonically.

Date: 12-15-2021

_Judge's signature_

City and state: Phoenix, Arizona

Honorable Michelle H. Burns, U.S. Magistrate Judge
_Printed name and title_

## ATTACHMENT A

*Property to be searched*

The property to be searched is a black Samsung Galaxy A20, in a black case, IMEI No. ending in -2721 (hereinafter the "**SUBJECT CELLULAR TELEPHONE**"). The **SUBJECT CELLULAR TELEPHONE** is currently located at ATF Phoenix Field Division evidence storage vault, located at 40 N Central Ave, Suite 900, in Phoenix, Arizona.

This warrant authorizes the forensic examination of the **SUBJECT CELLULAR TELEPHONE** for the purpose of identifying the electronically stored information described in Attachment B.

 

**ATTACHMENT B**

*Property to be seized*

1.      Any records and information found within the digital contents of the **SUBJECT CELLULAR TELEPHONE** that relate to the offense of Knowingly Make a False Statement to be Kept in the Records of a Person Licensed Under Chapter 44 of Title 18, United States Code in violation of Title 18, United States Code, Section 924(a)(1)(a), including:

    a.  all information related to the sale, purchase, receipt, shipping, importation, transportation, transfer, possession, or use of firearms, firearms parts or accessories, or ammunition;

    b.  all information related to buyers or sources of firearms, firearms parts or accessories, or ammunition (including names, addresses, telephone numbers, locations, or any other identifying information);

    c.  all bank records, checks, credit card bills, account information, or other financial records;

    d.  all information regarding the receipt, transfer, possession, transportation, or use of proceeds of firearms, firearms parts or accessories, or ammunition;

    e.  any information recording schedule or travel;

    f.  records of or information about the cellular telephone's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

    g.  evidence of the attachment to the cellular telephone of another storage device or similar container for electronic evidence;

> h. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the cellular telephone;
>
> i. evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation;
>
> j. contextual information necessary to understand the evidence described in this attachment.

2. Any records and information found within the digital contents of the **SUBJECT CELLULAR TELEPHONE** showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

2

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

Your Affiant, Katherine Rottman, being first duly sworn, hereby deposes and states as follows:

### I.   INTRODUCTION AND AGENT BACKGROUND

1.      Your Affiant makes this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to examine the following cellular telephone: is a black Samsung Galaxy A20, in a black case, IMEI No. ending in -2721, further described in Attachment A (hereinafter **"SUBJECT CELLULAR TELEPHONE"**), and in order to extract the electronically stored information set forth in Attachment B, which represent evidence and/or instrumentalities of the criminal violations further described below.

2.      Your affiant is a Special Agent with Bureau of Alcohol, Tobacco, Firearms and Explosives, United States Department of Justice, and have been since June 2020.

3.      I am presently a member of the ATF Phoenix Field Division Crime Gun Intelligence Center. As an ATF SA, my duties and responsibilities include conducting criminal investigations of individuals and entities for possible violations of federal laws, particularly those laws found in Title 18 and Title 21 of the United States Code. I have previously participated in investigations which resulted in the arrests, searches, and seizures of individuals and property. I have participated in the use of cooperating informants, undercover agents, video surveillance, GPS tracking devices, search warrants, and audio surveillance, among other law enforcement techniques, in the course of my career with ATF. During my tenure with the ATF, I have participated in numerous investigations that involve possession of firearms and ammunition by prohibited persons and investigations involving interstate firearms and ammunition trafficking. I am familiar with federal firearm and ammunition laws.

4.      The statements contained in this Affidavit are based on information derived from your Affiant's personal knowledge, training and experience, information obtained from the knowledge and observations of other sworn law enforcement officers, either directly or indirectly through their reports or affidavits; surveillance conducted by law enforcement officers, and analysis of public records.

5.      Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, your Affiant has not set forth all the relevant facts known to law enforcement officers.

## II.      BASIS FOR PROBABLE CAUSE

6.      On Wednesday October 20, 2021, Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF) Special Agents (SA) and Task Force Officers (TFO), assisted by the Phoenix Police Department (PPD) interdicted a Barrett M107A1 50-caliber rifle from Albaro RODRIGUEZ (DOB XX/XX/1989). Said firearm was originally purchased by RODRIGUEZ from Tombstone Tactical, a federal firearms licensee (FFL), in Phoenix, Arizona.

7.      Based upon my training and experience, as well as the training and experience of other law enforcement officers participating in this investigation, I am aware that a Barrett M107A1 50-caliber rifle is commonly sought after by cartels in Mexico due to the high power of these firearms.

8.      On Friday October 15, 2021, Tombstone Tactical contacted an ATF TFO telephonically and advised that a male, later identified as RODRIGUEZ, attempted to purchase a Barrett M107A1 50-caliber rifle that was on display in the store with $12,900 in cash. Tombstone Tactical further stated that due to the nature of the purchase, it ran RODRIGUEZ through the National Instant Criminal Background Check System (NICS), even though RODRIGUEZ possessed a Concealed Carry Permit. RODRIGUEZ was

2

delayed by NICS, and Mr. Keller informed RODRIGUEZ that the FFL would be able to transfer the Barrett rifle to RODRIGUEZ in a few days.

9.      Based upon my training and experience, as well as the training and experience of other law enforcement officers participating in this investigation, I am aware that paying in cash for a firearm costing over $10,000 when one does not have the income to support such a purchase is often done by straw purchasers, because the cash is given to them by another person.

10.     The same day, your Affiant went to Tombstone Tactical and observed surveillance footage provided by three security cameras throughout the FFL, to include the parking lot, an overview of the interior of the FFL, and the main entrance. Through a review of all three video angles, Your Affiant observed RODRIGUEZ inside Tombstone and filling out the ATF Form 4473 required for the sale.

11.     Your Affiant conducted a check of RODRIGUEZ and confirmed through law enforcement databases and utilities checks that RODRIGUEZ's current address was in Glendale, Arizona. Your Affiant found that RODRIGUEZ had one firearm traced back to him: two firearms were seized at the outbound Nogales Port of Entry, and one of those firearms (an AK-style rifle) was traced back to RODRIGUEZ with a six-day time to crime.

12.     Your Affiant ran RODRIGUEZ through a department of licensing query and discovered that RODRIGUEZ had a 2014 gray Jeep Grand Cherokee registered to him at the same Glendale, Arizona, address. A white Chevrolet Malibu bearing Arizona license plate no. BMR9765 was also registered to that address to Anna Osorio.

13.     Your Affiant ran RODRIGUEZ through the Arizona Department of Employment Services (DES), which showed that RODRIGUEZ made $1860 in the first quarter of 2021 and $986 in the second quarter of 2021, from OnCall Staffing; and $2095 in the second quarter of 2021 from Kenyon Plastering. RODRIGUEZ has also received $5,250 in unemployment payments since June of 2020.

3

14.     ATF SAs received information that RODRIGUEZ would arrive at Tombstone Tactical at 9:00 a.m. on October 20, 2021, and set up surveillance at RODRIGUEZ's residence in Glendale, Arizona, prior to that time. At approximately 9:21 a.m., surveillance units observed a male matching the description of RODRIGUEZ exit the residence and get into a white Chevrolet Malibu bearing Arizona license plate no. BMR9765. The male, who was later identified by PPD during the traffic stop as Albaro RODRIGUEZ, pulled into the parking lot of Tombstone Tactical at approximately 9:39 a.m. RODRIGUEZ made no stops in between the residence and Tombstone Tactical. RODRIGUEZ walked into Tombstone Tactical at 0940 hours. An ATF SA was inside the FFL at the time of transaction and confirmed that a Barrett rifle was transferred to RODRIGUEZ at 9:51 a.m.

15.     RODRIGUEZ left the FFL and loaded the firearm into the vehicle at 9:52 a.m., and left the parking lot of Tombstone at 9:54 a.m. Mobile surveillance units called out RODRIGUEZ's direction of travel, and RODRIGUEZ was stopped by the marked PPD units for a traffic infraction at approximately 9:57 a.m. PPD ultimately issued RODRIGUEZ a traffic ticket for the violation.

16.     After conducting the vehicle stop, PPD Officers approached the vehicle. They asked RODRIGUEZ if there were any weapons in the vehicle. RODRIGUEZ stated that he had just bought a 50-caliber rifle. PPD Officers identified one cell phone in the center console of the vehicle.

17.     At the time of the vehicle stop, Your Affiant and another ATF SA were already on scene. We approached RODRIGUEZ's vehicle while PPD was conducting their traffic stop. PPD Officers advised the SAs that RODRIGUEZ stated he had a firearm in his vehicle.

18.    Your Affiant began speaking with RODRIGUEZ at approximately 10:00 a.m. RODRIGUEZ stated that he currently lives at the Glendale, Arizona, address, and has lived there since 2015 with his wife, Anna Osorio.

19.    RODRIGUEZ stated that he currently works for First Convenience, a solar company, and has worked there for over two years. This information does not match the information provided on RODRIGUEZ by DES.

20.    RODRIGUEZ had difficulty explaining how many total firearms he had purchased and how many he had sold in the last year. RODRIGUEZ first stated that he still owned all the guns he purchased. Several minutes later, RODRIGUEZ stated that he bought one gun three months ago and sold it one month later. RODRIGUEZ stated that he made $150 from the sale of that firearm. RODRIGUEZ was unable to say what the make and model of this firearm was. RODRIGUEZ stated several times that he sold guns "private sale." After several more minutes, RODRIGUEZ stated that he actually purchased two firearms and had sold both firearms. RODRIGUEZ stated that he makes a profit on the guns he sells. RODRIGUEZ stated that he uses Armslist on his phone to sell firearms. RODRIGUEZ stated that he used his phone, and that the phone in the vehicle belongs to him.

21.    RODRIGUEZ stated that $13,000 in cash with which he purchased the Barrett rifle is not a lot of money for him because he saved the stimulus checks that he received during the pandemic. RODRIGUEZ stated that his wife, Osorio, resells jewelry, which contributes to their income; however, RODRIGUEZ could not tell Your Affiant the name of Osorio's business, only that she sells jewelry "on the streets."

22.    RODRIGUEZ stated that he purchased the Barrett rifle for himself but had not purchased any ammunition for the firearm. He was not able to say where he was planning to purchase any ammunition for the firearm. RODRIGUEZ stated that he was

going to take the rifle shooting at Table Mesa over the weekend, but still had no plan to purchase any ammunition.

23.     RODRIGUEZ consented to the search of the white Chevrolet Malibu. Inside that vehicle, ATF SAs found: (1) Barrett 50-caliber M107A1 rifle bearing S/N AE008172, new in box; (2) is a black Samsung Galaxy A20, in a black case, IMEI No. ending in -2721, which RODRIGUEZ claimed as his (the **SUBJECT CELLULAR TELEPHONE**); and (3) an AK-style bolt carrier group.

24.     Your Affiant informed RODRIGUEZ that ATF would seize all three items and give RODRFIGUEZ a Receipt for Property and Other Items.

25.     RODRIGUEZ reviewed ATF Form 3400.23 documenting the seizure of the **SUBJECT CELLULAR TELEPHONE**, the Barrett rifle, and the bolt carrier group. RODRIGUEZ was provided a carbon copy of ATF Form 3400.23. The SAs then walked RODRIGUEZ back to his vehicle, and RODRIGUEZ departed the scene.

26.     For the reasons set forth above, the **SUBJECT CELLULAR TELEPHONE** is currently in the lawful possession of the ATF. Therefore, while the ATF might already have all necessary authority to examine the device, I seek this additional warrant out of an abundance of caution to be certain that an examination of the device will comply with the Fourth Amendment and other applicable laws.

27.     Based upon the above, your affiant believes that probable cause exists to believe that RODRIGUEZ committed the offense of Knowingly Make a False Statement to be Kept in the Records of a Person Licensed Under Chapter 44 of Title 18, United States Code in violation of Title 18, United States Code, Section 924(a)(1)(a).

28.     The **SUBJECT CELLULAR TELEPHONE** was seized from a vehicle registered to RODRIGUEZ's wife and that RODRIGUEZ was found driving. RODRIGUEZ had the **SUBJECT CELLULAR TELEPHONE** with him in the vehicle when he picked up the Barrett rifle from the FFL.

29.     Based upon my training and experience, as well as the training and experience of other law enforcement officers participating in this investigation, I am aware that individuals acting in concert to illegally procure and traffic firearms must communicate with one another to coordinate their respective activities.

30.     RODRIGUEZ was observed on surveillance video in and around Tombstone Tactical using a cellular telephone that is similar in appearance to the **SUBJECT CELLULAR TELEPHONE** on the date he paid for the Barrett rifle and on the date that he returned to pick it up. It is common for straw purchasers to be on their cell phone with the intended recipient of the firearm during the purchase.

31.     RODRIGUEZ admitted to using the **SUBJECT CELLULAR TELEPHONE** to advertise and sell firearms on Armslist.

32.     ATF will search the **SUBJECT CELLULAR TELEPHONE** for text messages, phone calls, and social media messages between RODRIGUEZ and other individuals regarding the purchase of the Barrett rifle and other firearms.

33.     I believe that probable cause exists and supports the issuance of a search warrant to search the **SUBJECT CELLULAR TELEPHONE** for the items set forth in Attachment B hereto. I believe that the **SUBJECT CELLULAR TELEPHONE** contains evidence relating to the commission of the offense of Knowingly Make a False Statement to be Kept in the Records of a Person Licensed Under Chapter 44 of Title 18, United States Code in violation of Title 18, United States Code, Section 924(a)(1)(a).

34.     The **SUBJECT CELLULAR TELEPHONE** has remained in ATF custody since the time of its seizure on October 20, 2021. The **SUBJECT CELLULAR TELEPHONE** is currently being stored in the ATF Phoenix Field Division evidence storage vault, located in Phoenix, Arizona. Based on your Affiant's training and experience, I know that the **SUBJECT CELLULAR TELEPHONE** has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially

the same state as they were when the **SUBJECT CELLULAR TELEPHONE** first came into the possession of law enforcement.

### III.    ITEMS TO BE SEIZED

35.    Based upon the facts contained in this Affidavit, your Affiant submits there is probable cause to believe that the items listed in Attachment B will be found in the contents of the **SUBJECT CELLULAR TELEPHONE**.

36.    Based on my training, education, and experience, and discussions with other trained law enforcement personnel, along with information provided by sources of information and confidential sources, your Affiant knows the following:

37.    Firearms traffickers commonly use cellular telephones to communicate with other firearm traffickers and customers about firearm-related activities using telephone calls, text messages, email, social media, and other internet- and application-based communication forums. Moreover, firearms traffickers commonly use other capabilities of cellular telephones to further their firearms trafficking and money laundering activities. Therefore, evidence related to firearm trafficking activity and money laundering activity is likely to be found on the **SUBJECT CELLULAR TELEPHONE**.

38.    As previously set forth in this Affidavit, the target of this investigation has used electronic storage media to send messages and to post advertisements regarding potential purchases and sales of firearms. By training and experience, your Affiant also knows that telephones are commonly used to further firearms trafficking. Cellular telephones are the primary source of communication for firearms traffickers. Therefore, your Affiant believes that evidence of criminal activity, including information regarding straw purchasing by the subject, information regarding straw purchasing by others on behalf of the subject, and potential current locations of firearms that have traveled out of

legal commerce into illegal commerce, will be found on **SUBJECT CELLULAR TELEPHONE**.

39.     In addition to items which may constitute evidence and/or instrumentalities of the crimes set forth in this Affidavit, your Affiant also requests permission to seize any articles tending to establish the identity of persons who have dominion and control over the **SUBJECT CELLULAR TELEPHONE**.

## IV.     DIGITAL EVIDENCE STORED WITHIN A CELLULAR TELEPHONE

40.     As described in Attachment B, this application seeks permission to search for records and information that might be found in the contents of the **SUBJECT CELLULAR TELEPHONE**. Thus, the warrant applied for would authorize the copying of electronically stored information under Rule 41(e)(2)(B).

41.     *Probable cause.* Your Affiant submits that there is probable cause to believe records and information relevant to the criminal violations set forth in this Affidavit will be stored on the **SUBJECT CELLULAR TELEPHONE** for at least the following reasons:

a.     Your Affiant knows that when an individual uses a cellular telephone, the cellular telephone may serve both as an instrumentality for committing the crime and also as a storage medium for evidence of the crime. The cellular telephone is an instrumentality of the crime because it is used as a means of committing the criminal offense. The cellular telephone is also likely to be a storage medium for evidence of crime. From my training and experience, your Affiant believes that a cellular telephone used to commit a crime of this type may contain: data that is evidence of how the cellular telephone was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

9

b.      Based on my knowledge, training, and experience, your Affiant knows that cellular telephones contain electronically stored data, including, but not limited to, records related to communications made to or from the cellular telephone, such as the associated telephone numbers or account identifiers, the dates and times of the communications, and the content of stored text messages, e-mails, and other communications; names and telephone numbers stored in electronic "address books;" photographs, videos, and audio files; stored dates, appointments, and other information on personal calendars; notes, documents, or text files; information that has been accessed and downloaded from the Internet; and global positioning system ("GPS") information.

c.      Based on my knowledge, training, and experience, your Affiant knows that electronic files or remnants of such files can be recovered months or even years after they have been downloaded onto a cellular telephone, deleted, or viewed via the Internet. Electronic files downloaded to a cellular telephone can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a cellular telephone, the data contained in the file does not actually disappear; rather, that data remains on the cellular telephone until it is overwritten by new data.

d.      Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the cellular telephone that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a cellular telephone's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

42.      *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronic files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how the cellular telephone was used, the purpose of the use, who used it, and

when. There is probable cause to believe that this forensic electronic evidence will be found in the contents of the **SUBJECT CELLULAR TELEPHONE** because:

      a.    Data in a cellular telephone can provide evidence of a file that was once in the contents of the cellular telephone but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

      b.    As explained herein, information stored within a cellular telephone may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within electronic storage medium (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the cellular telephone. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the cellular telephone was remotely accessed, thus inculpating or exculpating the owner. Further, activity on a cellular telephone can indicate how and when the cellular telephone was accessed or used. For example, as described herein, cellular telephones can contain information that log: session times and durations, activity associated with user accounts, electronic storage media that connected with the cellular telephone, and the IP addresses through which the cellular telephone accessed networks and the internet. Such information allows investigators to understand the chronological context of cellular telephone access, use, and events relating to the crime under investigation. Additionally, some information stored within a cellular telephone may provide crucial evidence relating to the physical location of other evidence

11

and the suspect. For example, images stored on a cellular telephone may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The geographic and timeline information described herein may either inculpate or exculpate the user of the cellular telephone. Last, information stored within a cellular telephone may provide relevant insight into the user's state of mind as it relates to the offense under investigation. For example, information within a computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c.     A person with appropriate familiarity with how a cellular telephone works can, after examining this forensic evidence in its proper context, draw conclusions about how the cellular telephone was used, the purpose of its use, who used it, and when.

d.     The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a cellular telephone that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, cellular telephone evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on one cellular telephone is evidence may depend on other information stored on that or other storage media and the application of knowledge about how electronic storage media behave. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.     Further, in finding evidence of how a cellular telephone was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence

of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

43. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant your Affiant is applying for would permit imaging or otherwise copying the contents of the **SUBJECT CELLULAR TELEPHONE**, including the use of computer-assisted scans.

44. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

45. Your Affiant submits there is probable cause to believe that the items listed in Attachment B, which constitute evidence and/or instrumentalities of the offense of Knowingly Make a False Statement to be Kept in the Records of a Person Licensed Under Chapter 44 of Title 18, United States Code in violation of Title 18, United States Code, Section 924(a)(1)(a), are likely to be found in the contents of the **SUBJECT CELLULAR TELEPHONE** described in Attachment A.

*katherine rottman*
_____
Special Agent Katherine Rottman, ATF

~~*telephonically*~~
Subscribed and sworn ~~to before me~~ this _15_ day of December, 2021.

_____
HONORABLE MICHELLE H. BURNS
United States Magistrate Judge

13